# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No. 3:17-bk-32873-SHB

THOMAS BUBBA TRAMMELL                          Chapter 7

Debtor

## MEMORANDUM ON
## EMERGENCY MOTION BY THE UNITED STATES OF AMERICA
## TO MODIFY THE AUTOMATIC STAY TO PERMIT LEVY

**APPEARANCES:**     TARPY, COX, FLEISHMAN & LEVEILLE, PLLC
     Thomas Lynn Tarpy, Esq.
     1111 Northshore Drive
     Landmark Tower North
     Suite N-290
     Knoxville, Tennessee  37919
     Attorneys for Debtor

    JAMES DOUGLAS OVERBEY, ESQ.
    UNITED STATES ATTORNEY
     Kenny L. Saffles, Esq.
     Assistant United States Attorney
     Howard H. Baker, Jr. United States Courthouse
     800 Market Street
     Suite 211
     Knoxville, Tennessee  37902
     Attorneys for Internal Revenue Service

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Emergency Motion by the United States

of America to Modify the Automatic Stay to Permit Levy ("Motion for Stay Relief") filed on

October 13, 2017 [Doc. 17], asking the Court to modify and annul the automatic stay pursuant to

11 U.S.C. § 362(d)(1) so that the Internal Revenue Service ("IRS") could continue its levy

against Debtor's property to collect against nondischargeable tax liabilities.  At the preliminary

hearing on the Motion for Stay Relief held October 26, 2017, the parties advised the Court that,

because the dispute was not factual but was a matter of law, an evidentiary hearing was not

required, and the Motion could be decided on stipulations and briefs.[1]  Accordingly, the parties

filed their Joint Stipulation on November 3, 2017 [Doc. 32]; Debtor filed his Memorandum of

Law in Opposition to the Motion for Stay Relief on November 14, 2017 [Doc. 39]; and the IRS

filed its Reply on November 21, 2017 [Doc. 45].  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(G), and this memorandum constitutes the Court's findings of fact and conclusions of

law.[2] *See* Fed. R. Bankr. P. 7052, 9014(c).

## I.  FACTS

Debtor, a former Major League Baseball ("MLB") player, filed a Voluntary Petition

commencing this Chapter 7 bankruptcy case on September 18, 2017. [Doc. 32 at ¶¶ 1, 6.]  When

he filed his bankruptcy case, Debtor owed the IRS a total of $226,089.33 for past-due income tax

liabilities,[3] for which the IRS had recorded Notices of Federal Tax Lien with the Knox County

---

[1] Although the Motion for Stay Relief was filed as an emergency motion, at the hearing on October 26, Debtor's counsel indicated that no emergency existed because the lien attached to the entirety of the pension proceeds to be paid in the future and initially requested ninety days to brief the issues.  Although the Court intended at the October 26 hearing to decide the Motion expeditiously after briefing, the parties' briefs established that the pension funds were being held by the object of the levy such that the IRS would not be prejudiced by the Court taking up the Motion in due course. [*See* Doc. 45 at 2 n.1.]

[2] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such.  To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

[3] Specifically, he owed $93,250.72 for 2004; $34,157.34 for 2012; $19,107.92 for 2013; $24,036.68 for 2014; $32,161.91 for 2015; and $23,374.76 for 2016.  [Doc. 32 at ¶ 3.]

Register of Deeds on October 24, 2014 (for tax years 2004, 2007-08, and 2010-11), and August

21, 2015 (for tax years 2012-14).[4] [*Id*. at ¶¶ 3-4; Doc. 17, Ex. A.]

Because Debtor's mental illness ended his professional baseball career, when he filed this

case, he was entitled to MLB disability pension benefits of $8,400.00 monthly[5] from the MLB

Players' Pension Fund ("MLB Pension Fund"); monthly disability benefits (based on anxiety and

other mental conditions) in the amount of $2,209.00 from the Social Security Administration

("SSA"); and $1,160.00 in monthly benefits from the SSA as payee for his fifteen-year-old son,

who receives those dependent benefits because of Debtor's disability status. [Doc. 32 at ¶¶ 7-11,

13.]  Thus, Debtor's monthly income (including the full amount of the MBL disability pension

benefits) totals at least $11,769.00,[6] and his monthly expenses total approximately $9,643.00.[7]

[*Id*. at ¶¶ 20-21.]  In addition to the fifteen-year-old, who attends a local high school, Debtor also

has an eighteen-year-old son who is a student at the University of Tennessee. [*Id*. at ¶ 10.]

Debtor is entitled to receive the MLB disability pension benefits until his death or as long as his

mental illness continues. [*Id*. at ¶ 15.]

---

[4] Because the tax liability for 2016 had only recently been assessed, the IRS had not yet filed a Notice of Federal Tax lien when Debtor filed his petition. [Doc. 32 at ¶ 4.]

[5] These benefits were scheduled to decrease to $7,800.00 monthly in January 2018, after Debtor's divorce from his spouse was finalized. [Doc. 32 at ¶ 14.]  Debtor also expected to continue to owe a monthly domestic support obligation to his former spouse in the amount of $2,300.00 after finalization of the divorce. [*Id*. at ¶ 38; *see* Doc. 1 at 48.]

[6] Apparently, this amount does not include monthly withdrawals by Debtor from a life insurance policy that has an $8,000,000.00 death benefit. [*See* Doc. 45 at 6; Doc. 32 at ¶ 22-27.]  Because Debtor is disabled, he is not required to pay the premiums on the life insurance policy. [Doc. 32 at ¶ 23.] Debtor has withdrawn monthly from the policy's equity in amounts ranging from $1,200.00 to $2,400.00. [*Id.* at ¶¶ 26-27.]

[7] These expenses do not include gambling losses, which total at least $20,000.00 in the last year. [*Id*. at ¶¶ 29-30; *see* Doc. 1 at 47-48.]  Additionally, Debtor's Schedule J includes federal tax payments of $518.00; however, although the IRS has reduced its levy by $703.00 for estimated tax payments, Debtor acknowledges such payments were not made for the 2017 tax year. [Doc. 1 at 48; Doc. 32 at ¶¶ 17, 36.]  Notably, Debtor's budget also includes $1,300,00 for housing (even though Debtor lives with his parents [Doc. 32 at ¶ 28]) and $1,800.00 for children's education costs. [*See* Doc. 1 at 47-48.]

On August 5, 2016, the IRS issued a Notice of Levy against Debtor's MLB disability

pension ("2016 Levy"), reflecting a total amount due of $192,040.10. [*Id.* at ¶ 16; *see also* Doc.

17, Ex. B.]  After allowances for Debtor's dependents and other circumstances,[8] the IRS agreed

to reduce the amount being levied to allow for payment of guardian ad litem fees in the monthly

amount of $1,076.00 owed by Debtor in connection with his divorce in Florida. [Doc. 32 at ¶

17.]  The IRS also agreed to reduce the levy by $703.00 monthly for estimated tax payments.

[*Id.*]  The resulting levy payment from the MLB Pension Fund to the IRS was $3,877.00

monthly, with the remaining $4,523.00 going to Debtor.[9] [*See id.*]  Notwithstanding the

allowances, Debtor has not paid off the guardian ad litem fees, nor has he made estimated tax

payments to the IRS for the 2017 tax year, for which he likely will owe taxes on annual income

of approximately $140,000.00. [*Id.* at ¶¶ 18-19, 36-37.]

Immediately before Debtor filed his bankruptcy case, his father (who holds Debtor's

power of attorney) filed a hardship request with his local Congressman, asking that the funds

taken under the 2016 Levy be released on the basis that Debtor needed the funds in order to pay

his son's college tuition. [*Id.* at ¶¶ 31-32.]  Because the IRS did not consider Debtor's inability to

fund his son's college tuition as a justifiable hardship and Debtor appears to have sufficient

income for tuition payments notwithstanding the 2016 Levy, the hardship request was denied.

[*Id.* at ¶ 33.]  Nevertheless, the October 1, 2017 payment to the IRS under the 2016 Levy was

subject to a "stop payment" by the MLB Pension Fund because Debtor had filed for bankruptcy

protection on September 18, 2017. [*Id.* at ¶ 34; Doc. 17, Ex. C.]  The IRS allowed Debtor to have

the full October payment; however, it did not agree to release the 2016 Levy and filed this

---

[8] The IRS has not attempted to offset Debtor's SSA benefits. [Doc. 32 ¶ 16.]

[9] The resulting monthly income received by Debtor, including the SSA benefits for Debtor and his son and the life
insurance withdrawal of $1,200.00, totals $9,092.00.

Motion for Stay Relief in order to resolve the matter and receive future payments under the 2016

Levy.[10] [Doc. 32 at ¶ 35; Doc. 17, Ex. D.]

As stated in the Joint Stipulations, the issue before the Court is "[w]hether the United

States is entitled to *nunc pro tunc* relief from the automatic stay under 11 U.S.C. § 362(d)(1) to

permit the IRS to continue the [2016 L]evy against the MLB disability pension and to retain any

and all amounts that have been and/or will be received from and/or held as a result of the [2016

L]evy." [Doc. 32 at 4.]

## II.  ANALYSIS

Motions for stay relief are governed by 11 U.S.C. § 362(d), which states, in material part:

(d)  On request of a party in interest and after notice and a hearing, the court shall
grant relief from the stay provided under subsection (a) of this section, such as by
terminating, annulling, modifying, or conditioning such stay —

(1) for cause, including the lack of adequate protection of an interest in
property of such party in interest[.]

Because it is not expressly defined by § 362(d)(1), what constitutes "cause" and whether it exists

is determined through "a fact-intensive inquiry made on a case-by-case basis." *In re Shivshankar*

*P'ship LLC*, 517 B.R. 812, 817 (Bankr. E.D. Tenn. 2014) (citations omitted).

The bankruptcy court must balance the hardships of the parties and base a decision
on whether to modify the automatic stay on the degree of hardship involved and the
goals of the Bankruptcy Code.  Cause is an intentionally broad and flexible concept,
made so in order to permit the courts to respond in equity to inherently fact-
sensitive situations.

*Mooney v. Gill*, 310 B.R. 543, 546-47 (N.D. Tex. 2002) (citations omitted).  Adequate

protection, however, is expressly addressed by the Bankruptcy Code, which provides that when

---

[10] Although the parties expected at the October 26, 2017 hearing that the MLB Pension Fund would pay monthly
benefits to Debtor until the Court ruled on the Motion for Stay Relief, which is why the IRS sought emergency relief,
it appears that the MLB Pension Fund determined that it would hold future payments pending the outcome of the
Motion for Stay Relief.  [*See* Doc. 45 at 2 n.1 & Ex. 1.]

4

adequate protection is required, it may be provided through payments, additional or replacement

liens, or any other relief that affords the creditor "the indubitable equivalent" of its interest in the

secured property. *See* 11 U.S.C. § 361.

> The determination of whether a creditor's interest is adequately
> protected is not an exact science nor does it involve a precise
> arithmetic computation. Rather, it is pragmatic and synthetic,
> requiring a court to balance all relevant factors in a particular case,
> including the value of the collateral, whether the collateral is likely
> to depreciate over time, the debtor's prospects for a successful
> reorganization and the debtor's performance under the plan. Other
> considerations may include the balancing of hardships between the
> parties and whether the creditor's property interest is being unduly
> jeopardized.
>
> *In re Rogers*, 239 B.R. 883, 887 (Bankr. E.D. Tex. 1999) (citing *In re Olick*, 221
> B.R. 146, 161 (Bankr. E.D. Pa. 1998)). "A secured creditor retains the right to
> 'adequate protection' of its collateral, which means it is entitled to have the value
> of its collateral maintained at all times, and it can obtain relief from the automatic
> stay and take back its collateral at any time if that interest is not adequately
> protected or for other 'cause.'" *Price v. Del. State Police Fed. Credit Union (In re
> Price)*, 370 F.3d 362, 373 (3d Cir. 2004).

*In re Bushee*, 319 B.R. 542, 551-52 (Bankr. E.D. Tenn. 2004). A creditor arguing lack of

adequate protection "must show that there has been a decline (or at least that there is a real threat

of decline) in the value of the collateral at issue; only upon a showing does the burden shift to the

debtor to prove that the collateral at issue is not, in fact, declining in value." *Wilmington Trust

Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470, 477 (S.D.N.Y 2013).

　　　As conceded by Debtor in his brief, the IRS is entitled to "prospective" stay relief under

the foregoing analysis "for purposes of initiating the process to levy on future payments." [Doc.

39 at 1.] The stipulated facts also evidence that the IRS is not adequately protected.

Notwithstanding that Debtor has monthly income of approximately $11,769.00, he has

repeatedly failed to pay his taxes, including current estimated tax payments, and he has not paid

guardian ad litem fees associated with his divorce, although the IRS reduced the levy amount for

those express purposes. [Doc. 32 at ¶¶ 17-20, 36-37.]   Accordingly, the Court finds that there is no real dispute that the IRS is entitled to stay relief for cause, including lack of adequate protection.

Notwithstanding his acquiescence that the IRS is entitled to stay relief to initiate a new levy against Debtor's MLB pension benefits, Debtor opposes the relief requested by the IRS in its Motion for Stay Relief for "an order *nunc pro tunc* modifying and annulling the automatic stay to permit the IRS to retain any funds it accesses by levy and to direct the MLBP Pension Fund to pay the [2016 L]evy as required by law" [Doc. 17 at 4]. [*See* Doc. 39 at 1.]   Specifically, Debtor disagrees that the IRS "is entitled to any levy payments due subsequent to the filing of the bankruptcy proceeding and prior to the IRS taking proper steps to cause the issuance of a new levy," [*id.* at 1], and argues that the 2016 Levy cannot continue against his MLB pension benefits because it is not a continuing levy for "salary or wages" as defined by 26 C.F.R. § 301.6331-1(b)(1) [*id.* at 4] and because the IRS's failure to release the 2016 Levy when Debtor filed for bankruptcy constitutes a violation of the automatic stay [*id.* at 6-7].

In response, the IRS argues that Debtor's arguments lack merit because it is entitled to stay relief (as conceded by Debtor), the 2016 Levy is a continuing levy against the MLB disability pension benefits [Doc. 45 at 2-4], and that even if its failure to release the 2016 Levy did violate the automatic stay, the IRS is entitled to retroactive relief from the stay such that no violation occurred [*id.* at 4-7].

The Court, having analyzed both sides' arguments, finds that the 2016 Levy is a continuing levy against the MLB disability pension benefits and that the IRS is entitled to

retroactive stay relief and annulment of the stay such that, to the extent that any violation of the

stay might have occurred, it is nullified.[11]

### A. The 2016 Levy is a Continuing Levy Under 26 U.S.C. § 6331 and 26 C.F.R. § 301.6331-1.

The IRS issued the 2016 Levy pursuant to 26 U.S.C. § 6331(a), which authorizes the IRS

"to collect such [delinquent] tax (and such further sum as shall be sufficient to cover the

expenses of the levy) by levy upon all property and rights . . . belonging to such person or on

which there is a lien provided in this chapter for the payment of such tax."  Subsection (b) also

applies here to provide that "a levy shall extend only to property possessed and *obligations*

*existing at the time thereof.*" 26 U.S.C. § 6331(b) (emphasis added).  The related regulation

further provides that "[o]bligations exist when the liability of the obligor is fixed and

determinable although the right to receive payment thereof may be deferred until a later date." 26

C.F.R. § 301.6331-1(a).

Applying these provisions leads to the conclusion that although "[a]n IRS levy is

generally a one-time occurrence rather than a continuing event, seizing property in existence at

the time the levy is served, . . . a one-time levy may seize a future stream of payments if the

taxpayer's right to the payments is fixed and determinable without any requirement for the

provision of future services." *Bowers v. United States*, 861 F. Supp. 2d 921, 923 (C.D. Ill. 2012)

(citing 26 U.S.C. § 6331(a), -(b); 26 C.F.R. § 301.633-1).  "[A] levy may seize a future stream of

payments to which the taxpayer has an unqualified fixed right.  This includes the right to receive

future payments from pension plans that are not specifically exempt from levy."[12] *O'Donnell v.*

---

[11] Because discharge was entered on March 9, 2018, the automatic stay terminated on that date as a matter of law pursuant to 11 U.S.C. § 362(c)(2)(C).

[12] The MLB disability pension benefits here are not exempt from levy under 26 U.S.C. § 6334(c).

7

*United States*, No. 13-CV-1238-JPG-PMF, 2014 WL 5350448, at \*3 (S.D. Ill. Oct. 21, 2014)

(citations omitted); *see also Weiler v. United States*, 82 F.3d 424, 1996 WL 169254, at \*1 n.2

(9th Cir. Apr. 10, 1996); Rev. Rul. 55-210, 1955-1 C.B. 544 ("Where a taxpayer has an

unqualified fixed right, under a trust or a contract . . . to receive period payments or distributions

of property, a Federal lien for unpaid tax attaches to the taxpayer's entire right, and a notice of

levy based on such lien is effective to reach, in addition to payments or deductions then due, any

subsequent payments or distributions that will become due."); *Rockwell v. United States*, No.

MJG-16-0355, 2016 WL 4089561, at \*3 (D. Md. Aug. 2, 2016) (holding that "the single levy [on

the right to the interest income stream fixed by a note] validly attached to future payments.");

*KMG Props. v. I.R.S.*, No. 08-1544, 2009 WL 1885930, at \*8 (W.D. Pa. June 30, 2009) (holding

that monthly rental payments were subject to a continuing levy because the "levy reached

Plaintiff's then existing right to future payments under the lease").

Here, there is no dispute that the IRS filed tax liens against Debtor's property and had

authority to file the 2016 Levy.  Additionally, even though it was not stipulated, the Court can

easily deduce that, because the 2016 Levy was issued in August 2016 and the parties are arguing

over payments that were to be made to the IRS after October 1, 2017, the IRS, in fact, was

receiving monthly payments from the MLB Pension Fund between August 2016 and October

2017 pursuant to the 2016 Levy.  Thus, by its very nature, the 2016 Levy was continuing in

nature and not, as Debtor argued in his brief, a one-time occurrence.

**B.  The IRS is Entitled to Retroactive Stay Relief.**

With respect to retroactive stay relief, this Court has previously explained:

"Of the four enumerated types of relief in § 362(d), annulment is unique in that it
asks the court to retroactively permit an action taken in violation of the stay." *In re
Elder–Beerman Stores Corp.,* 195 B.R. 1012, 1017 (Bankr. S.D. Ohio 1996).
Under Sixth Circuit authority,

> [b]ankruptcy courts have the jurisdiction to modify the automatic stay so as
> to allow actions against the debtor. 11 U.S.C. § 362(d).  This section
> expressly permits the bankruptcy court to annul the stay.  This power to
> annul "permits the order to operate retroactively, thus validating actions
> taken by a party at a time when he was unaware of the stay.  Such actions
> would otherwise be void." 2 Collier on Bankruptcy § 362.07 (footnotes
> omitted).  If we are to give effect to the statutory authority to annul a stay,
> such actions can only be described as invalid and voidable, since void
> actions are incapable of later cure or validation.

> *Easley v. Pettibone Mich. Corp,* 990 F.2d 905, 909-10 (6th Cir. 1993) (footnote
> omitted).  "The stay may be annulled only in the presence of extraordinary
> circumstances, which include the debtor's bad faith filing of the bankruptcy case, a
> creditor's lack of 'knowledge of the applicability of the automatic stay,' and unfair
> prejudice to the creditor[,]" *In re Burrell,* 186 B.R. 230, 235 (Bankr. E.D. Tenn.
> 1995) (citations omitted), and the equitable exceptions justifying annulment of the
> stay "must be applied sparingly." *In re Printup,* 264 B.R. 169, 176 (Bankr. E.D.
> Tenn. 2001).  "We suggest that only where the debtor unreasonably withholds
> notice of the stay and the creditor would be prejudiced if the debtor is able to raise
> the stay as a defense, or where the debtor is attempting to use the stay unfairly as a
> shield to avoid an unfavorable result, will the protections of section 362(a) be
> unavailable to the debtor." *Easley,* 990 F.2d at 911.  "Among the factors to be
> considered are the debtor's bad faith in filing the bankruptcy petition and the
> moving party's knowledge of the bankruptcy at the time of its action. . . .  Absent a
> finding of bad faith, courts may also grant retroactive relief if they find that the
> moving party had no knowledge of the bankruptcy at the time of its action, and the
> court finds that it would have granted relief before the act, had such relief been
> timely requested." *Elder–Beerman Stores Corp.,* 195 B.R. at 1017.

*In re Benchmark Capital, Inc.*, 490 B.R. 566, 573 (Bankr. E.D. Tenn. 2013).  Here, based on the

stipulated facts as well as Debtor's concession that the IRS was entitled to prospective relief

from the automatic stay concerning Debtor's pension, the Court would have granted the IRS stay

relief at all times; thus, cause exists to grant stay relief retroactively.

Additionally, the Court agrees with the IRS that it would be unduly prejudiced if the

Court does not grant retroactive stay relief.  Absent such retroactive stay relief, the MLB

disability pension benefits would flow to Debtor and likely would be forever lost to the IRS,

which can collect on the 2016 Levy only so long as Debtor remains eligible for the disability

pension (which would terminate if Debtor recovers from his disability and will terminate on

Debtor's death).

An Order consistent with this Memorandum will be entered.

FILED:  March 19, 2018

BY THE COURT

*/s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE

10